SIGAL CHATTAH
United States Attorney
District of Nevada
Nevada Bar Number 8264
JACOB H. OPERSKALSKI
Assistant United States Attorney
Nevada Bar Number 14746
501 Las Vegas Blvd. South, Suite 1100
Las Vegas, Nevada 89101
PHONE: (702) 388-6336
jacob.operskalski@usdoj.gov
*Representing the United States of America*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| UNITED STATES OF AMERICA, | 2:25-cr-00093-JAD-EJY |
| Plaintiff, | **Government's Response to Kim's Motion for District Court Review of Magistrate Judge's Detention Order** |
| v. | |
| PAUL HYON KIM, | |
| Defendant. | |

**Certification: This response is timely.**

## I. Introduction

Under cover of darkness in the early morning hours of March 18, 2025, Paul Hyon Kim armed himself with an AR-style firearm and three Molotov cocktails in order to carry out his premeditated plan to use violence to send a message of resistance. Kim arrived at the Tesla collision business in Las Vegas, Nevada, shot out cameras to avoid being identified, and spray-painted "RESIST" on the front of the business. Kim then shot into

and threw three Molotov cocktails into Tesla vehicles parked at the collision location, causing significant damage. For over a week, he evaded apprehension.

The United States hereby responds to Kim's Motion for District Judge Review of Magistrate Judge's Detention Order, ECF No. 21. Through his actions, Kim has repeatedly demonstrated that he poses a significant risk of flight and is a danger to this community. Accordingly, his motion should be denied.

## II. Factual and Procedural Background

On March 18, 2025, law enforcement officials responded to a 9-1-1 call regarding a man, dressed in a black hoodie and black pants and carrying a black backpack setting vehicles on fire at a Tesla collision business. After the Clark County Fire Department suppressed the flames, law enforcement determined that the subject had caused significant damage to five Tesla vehicles by firing shots and throwing three Molotov cocktails[1] into three of the vehicles. Two of the devices had detonated, but a third was left undetonated inside of a Tesla vehicle. In response to this incident, the law enforcement community in Las Vegas set out on a nearly eight-day manhunt.

After a painstaking, multi-agency investigation that included extensive review of surveillance footage, cell tower location data, license plate reader scans, etc., the Las Vegas Metropolitan Police identified Kim as the suspect in this case. Subsequently, Kim's residence was searched and law enforcement discovered a treasure trove of inculpatory evidence tying Kim to this March 18 incident, including a firearm that matched the description of the firearm believed to be used in the incident, pink paint residue consistent

---

[1] A Molotov cocktail is a hand-thrown incendiary weapon consisting of a frangible container filled with flammable substances and equipped with a fuse. ECF No. 1 at 5.

2

with the paint used to leave the word "resist" on the front of the business, a black hoodie, a black backpack, and a handwritten note that had the words "Escape route" written on it. DNA analysis later determined that Paul Kim's DNA is also believed to have been recovered from items taken from the crime scene.

On March 27, 2025, the government filed a Criminal Complaint charging Kim with one count of unlawful possession of an unregistered firearm (that "firearm" being a "destructive device," i.e. Molotov cocktail) in violation of 26 U.S.C. § 5861(d) and arson in violation of 18 U.S.C. § 844(i). ECF No. 1. Kim had his initial appearance that same day and sought a one-day continuance of the detention hearing. ECF No. 6.

A senior Pretrial Services Officer issued a memorandum prior to the detention hearing noting various concerns. Of note, the report documented that Kim had attempted suicide eight years ago with a firearm, but he did not pull the trigger. Pretrial Services Addendum at 3. Despite the risks identified, the report recommended Kim be released on various conditions, including home detention, if the defendant could "[i]dentify a suitable third party custodian that the defendant can reside with, as canvassed and approved by the Court." PSR Addendum at 4.

At the resulting detention hearing on March 28, the government moved for detention on three separate bases: pursuant to 18 U.S.C. § 3142(f)(1)(E), because this case involves the use of a "destructive device" (three separate Molotov cocktails), and § (f)(2)(A) and (B), which provide:

> The judicial officer shall hold a hearing to determine whether any condition or combination of conditions set forth in subsection (c) of this section will reasonably assure the appearance of such person as required and the safety of any other person and the community-- . . . upon motion of the attorney for the Government or upon the judicial officer's own motion, in a case that involves--

(A) a serious risk that such person will flee; or
(B) a serious risk that such person will obstruct or attempt to obstruct justice, or threaten, injure, or intimidate, or attempt to threaten, injure, or intimidate, a prospective witness or juror.

After hearing the arguments of the parties, the magistrate court concurred with the recommendation of Pretrial Services that conditions, including a third-party custodian and home detention, could address flight risk, but found that the question of dangerousness was the "more difficult question". The court would not release Kim to a third party without meeting the proposed third-party custodian.

During that hearing, the Pretrial Services Officer noted that their office had concerns about the closeness of the relationship between the defendant and his mother. According to the Pretrial Services Report, Kim reported that he has contact with his mother "once every few months." PSR Addendum at 1. His family described their level of contact similarly, according to the report: "The defendant's parents verified his family ties but noted he 'barely calls' them. The defendant's brother verified his family ties but stated the defendant does not talk much with their parents." PSR Addendum at 2. The court provided Kim the opportunity to have his mother come to court and be evaluated for her suitability as a third-party custodian. Accordingly, the remainder of the hearing was continued.

On March 31, 2025, the continued hearing proceeded. Prior to the hearing, prior defense counsel had requested a translator for Kim's mother and stated, "Mr. Kim's mother speaks English, but it might be easier for her to understand Korean." A translator was provided. After a thorough canvassing, and after additional arguments from the parties, the court took a recess to consider all of the arguments. ECF No. 16. The court issued an extremely thorough order setting out why Kim is a danger to the community. In sum, the

4

court found: "by clear and convincing evidence, that there are no conditions or combination of conditions that will reasonably assure the safety of other persons or the community and, on that basis, Defendant is ordered detained pending trial." ECF No. 17 at 5.

On April 9, 2025, a Federal Grand Jury returned an Indictment charging Kim with two counts of arson of property used in interstate commerce and one count of attempted arson of property used in interstate commerce in violation of 18 U.S.C. § 844(i) and one count of possession of an unregistered firearm in violation of 26 U.S.C. §§ 5841, 5861(d), and 5871. ECF No. 23.

### III. Law and Argument

**A.    Standard of Review and the Bail Reform Act**

Under 18 U.S.C. § 3145(b), the court with original jurisdiction over the charged offense has the jurisdiction to review a detention order. The reviewing court reviews a magistrate judge's order of detention de novo. *See United States v. Koenig*, 912 F.2d 1190, 1192-93 (9th Cir. 1990). While "the district court is not required to start over in every case, and proceed as if the magistrate's decision and findings did not exist[,]" the district court "should review the evidence before the magistrate and make its own independent determination whether the magistrate's findings are correct, with no deference." *Id*.

The Bail Reform Act requires the least restrictive conditions possible to assure the defendant's appearance and the safety of the community. *See* 18 U.S.C. § 3142(c)(1)(B). If there is no condition or combination of conditions that will reasonably assure the appearance of the defendant and the safety of any other person and the community, the defendant shall be detained pending trial. *See* 18 U.S.C. § 3142(e).

To determine whether conditions would reasonably assure the defendant's appearance and the safety of any other person and community, § 3142(g) provides four factors to consider: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant; and (4) the nature and seriousness of the danger to any person or the community that would be posed by defendant's release. For a defendant's risk of flight, the government must prove by a clear preponderance of the evidence that the defendant will not appear as required. *United States v. Motamedi*, 767 F.2d 1403, 1406-07 (9th Cir. 1985). As for a defendant's danger to any person or the community, the government must show by clear and convincing evidence that no pretrial conditions could reasonably assure the public's safety. *Id*.

**B. Argument**

The statutory factors strongly support the conclusion that conditions cannot be fashioned to sufficiently address the risk that Kim will flee to evade the charges he faces, and that conditions cannot be fashioned to mitigate the danger Kim poses to the community.

    **i.  The nature of the charged offenses**

All arson cases should be taken seriously, but the facts here are uniquely troubling. Kim clearly planned this attack – he methodically shot out cameras, used a firearm and explosives to cause damage, and fled the scene in a way that enabled him to evade apprehension for over a week. As the magistrate judge noted, it is rare in Nevada to see a Molotov cocktail used to send a message in this manner – but that was how Kim wanted to send his message.

Confusingly, Kim attempts to minimize the severity of this event by arguing, without any legitimate basis, that a Molotov cocktail "is not an explosive device." ECF No. 6. In this case, a Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") Destructive Device Examiner reviewed pictures of the undetonated device, and

> Based upon the provided information this device possesses the construction and characteristics of a destructive device and would be properly identified as an Incendiary Bomb as that term is defined in 26 U.S.C, [sic] Section 5845(f). Additionally, this would also be an explosive as defined under 18 USC [sic] 844(j). This is a preliminary determination only pending the receipt of the physical evidence and the associated laboratory report.

ECF No. 1 at 5. Kim's assertions to the contrary, without any reference to any expertise of any kind, are unpersuasive.

The salient point is that Kim used an AR-style firearm and explosives to send a message. Kim put first responders' lives at risk when they had to respond to this incident and when they had to retrieve an undetonated explosive in an area where flames had been erupting. Kim chose to put first responders at risk for his own purposes. Such an individual should not be trusted out of custody pending the trial in this matter.

Additionally, Kim evaded apprehension for over a week after committing these offenses, and as noted above, law enforcement discovered a note in Kim's residence that had the words "Escape plan" written down. Now that Kim faces a mandatory minimum sentence of at least five years for counts one through three of the indictment, he has an even greater incentive to do as he planned: escape. Similarly, he should not be trusted to appear as ordered instead of doing what he implored others to do: "resist".

     **ii.**    **The weight of the evidence**

The weight of the evidence is the least persuasive factor for the Court to consider, but here, the evidence supporting all four counts in the indictment returned by the grand jury, is overwhelming. To reference a few points, evidence regarding Kim's vehicle places him near the scene of the crime, his DNA is believed to be on items recovered from the crime scene, one of the firearms seized from his residence is consistent with the firearm used in this incident, and more inculpatory evidence referenced above was seized from his residence. Although presumed innocent until proven guilty, the evidence demonstrates that there is no reasonable doubt that Kim committed the charged offenses.

     **iii.**    **The history and characteristics of the defendant and the danger he poses to the community**

Kim has a history of mental illness and has even attempted suicide with a firearm. Although that attempt was eight years ago, the fact that he was found to have multiple firearms in his home and committed arson in such a dramatic fashion is extremely concerning. Kim's actions demonstrate that he feels as though he has nothing to lose. If released, he is a danger to himself, to law enforcement, and to anyone who may interrupt his attempts to send a message through violent means.

Kim also lacks an adequate support system to incentivize his compliance with court orders or that would protect the community. Pretrial Services recommended he be released if a *suitable* third-party custodian could be identified. No such person exists. Kim's mother was thoroughly canvassed by the magistrate court and once she could see how her story would affect the detention status of her son, her story changed significantly. The problem was not an issue of inadequate translation – it was a new story claiming daily contact between Kim and his mother, which conflicted with what Kim, his parents, and his brother

had told Pretrial Services. Kim committed this crime when he was living far from his parents; his family members are not suitable custodians, and that condition is not sufficient to protect the community.

Defense counsel has made repeated references to the political implications of this case. In this criminal prosecution, Kim's political leanings are irrelevant and should play no part in these detention proceedings. On the other hand, what is at issue, is Paul Kim's willingness to use a firearm and three Molotov cocktails to make his feelings known. He is a danger to this community and a flight risk, and he should be detained accordingly.

### IV.  Conclusion

Based on the foregoing, Paul Hyon Kim remains a significant danger to the community and cannot be trusted to adhere to Court-imposed conditions. His motion should be denied.

Respectfully submitted this 18th day of April, 2025.

          SIGAL CHATTAH
          United States Attorney

          *s/ Jacob H. Operskalski*
          JACOB H. OPERSKALSKI
          Assistant United States Attorney